USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/14/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                         :

VICTOR TUCKETT,                           :

                                Plaintiff,    :          1:16-cv-4081-GHW

              -against-                 :         MEMORANDUM OPINION
                                             :               AND ORDER

SLADE INDUSTRIES, INC. and     :
SLADE ELEVATOR, INC.,             :

                                Defendants.   :

-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

    Plaintiff Victor Tuckett was employed by the New York City Department of Correction ("DOC") as a welder for more than twenty-four years. On December 23, 2014, Tuckett was exiting a freight elevator on Rikers Island when he tripped on the elevator door and injured his left knee. Tuckett brought this general negligence action against Defendants Slade Industries, Inc. and Slade Elevator, Inc. (collectively "Slade"), who are responsible for maintaining the elevator, alleging that Slade was negligent in its maintenance and repair of the elevator. Slade has moved for summary judgment on the claims against it. Because there is a genuine dispute regarding whether Slade had actual notice of the elevator's misleveling problem, and because Slade has failed to show that the elevator was functioning properly after Tuckett's accident, Slade's motion for summary judgment is DENIED.

## I.    BACKGROUND

    Since February 2014, Tuckett has worked in Building C76 at the Eric M. Taylor Center ("EMTC") on Rikers Island. Defs.' Resp. to Pl.'s Local Rule 56.1 Statement ("Defs.' 56.1 Resp.") (ECF No. 54) ¶ 38. At EMTC, elevator Number 4F6009, also referred to as the Storehouse

Elevator or West Elevator (hereinafter "Storehouse Elevator"), travels between two floors—the basement, where the workshop and welding materials are housed, and the main floor. Defs.' 56.1 Resp. ¶ 44. The elevator has "clamshell" doors that "separat[e] in the middle, so that the top door retracts into the ceiling, and the bottom door retracts into the floor." *Id.* ¶ 45. Inside the elevator, there is an interior gate that opens vertically from the floor and ascends into the ceiling. *Id.* ¶ 47-48. When entering the elevator, the gate closes first, followed by the clamshell doors. *Id.* ¶¶ 48, 55. When exiting the elevator, the clamshell doors open first, followed by the interior gate. *Id.* ¶ 56.

On the morning of December 23, 2014, Tuckett entered the Storehouse Elevator on the basement level with two DOC electricians, Alecsandr Groysman and Kwongcheuk Chui. *Id.* ¶ 52. When the elevator arrived at the main floor, both the clamshell doors and the gate opened, and Tuckett "began turning to his left to step out of the elevator [and as] he did so, his left foot became caught on the top of the lower clamshell door," which protruded two to three inches. *Id.* ¶ 59; *see* Schultz Decl., Ex. D, Dep. of Victor Tuckett ("Tuckett Dep.") (ECF No. 36-4), at 41:8-17. Tuckett "trip[ped] forward and his left knee 'popped.'" Defs.' 56.1 Resp. ¶ 60; *see* Tuckett Dep. at 45:15. He sustained various injuries to his left knee that have required surgery. Defs.' 56.1 Resp. ¶ 60.

a. **Slade Elevator**

Pursuant to a contract between DOC and Slade, Slade was responsible for maintaining the elevators at EMTC. Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") (ECF No. 37) ¶ 5. "[T]he work to be performed by [Slade] . . . consist[ed] of furnishing all material [and] labor . . . necessary to provide full maintenance services, and repairs . . . including inspections, adjustments, tests and replacement of parts . . . ." Supplement to Decl. of David Tolchin ("Tolchin Supp. Decl."), Ex. 1, Full Maintenance and Preventative Services Agreement (ECF No. 60-1), at § 2.0. Slade contends that its mechanics performed preventative maintenance on the Storehouse Elevator once a month in 2014. Defs.' 56.1 ¶ 93. During this time, Slade employee Albert Alvarado was the mechanic

2

responsible for servicing the elevators at Rikers Island. Declaration of Matthew Schultz, ("Schultz Decl."), Ex. J, Deposition of Albert Alvarado ("Alvarado Dep.") (ECF No. 36-14), at 14:22-15:2. Alvarado's job was to ensure that the elevators on Rikers Island were in "working order." Alvarado Dep. at 11:17-22. His work included, among other things, making minor repairs and checking the cleanliness and lubrication of the machinery. Alvarado Dep. at 11:17-24. While performing his duties at Rikers Island, Alvarado would "specifically ask the people at the building if they were having any problems or any issues that need[ed] to be addressed." Defs.' 56.1 ¶ 89. In addition, Alvarado would "ride the elevator to see how [it] was functioning," including making "sure the doors [were] opening and closing properly." Alvarado Dep. at 46:20-23.

### b. Reporting Issues with the Storehouse Elevator

DOC had an established procedure for reporting issues with the Storehouse Elevator to Slade: any issues were to be brought to the attention of Correction Officer Pamela Housman,[1] who would then notify Correction Officer Thomas Phillips. Schultz Decl. Ex. G, Aff. of James Garrity ("Garrity Aff.") (ECF No. 36-9) ¶ 4. Officer Phillips would in turn contact Slade to schedule repairs or service. Defs.' 56.1 ¶ 12. When it was alerted of an issue, "Slade would send out a mechanic to EMTC to address the issue." Garrity Aff. ¶ 3. Officer Phillips testified that he did not remember receiving any notifications from DOC employees regarding the Storehouse Elevator doors failing to fully open at any time prior to Tuckett's accident on December 23, 2014, nor could he recall notifying Slade of any such problem. Defs.' 56.1 ¶ 16. Similarly, Alvarado testified that he did not recall receiving any complaints regarding the doors' failure to open fully. Defs.' 56.1 ¶ 18; Alvarado Dep. at 53:3-7.

Although Officer Phillips did not recall receiving complaints about or notifying Slade of any problems with the elevator doors, multiple DOC employees reportedly complained to Officer

---

[1] Officer Houseman was not deposed in this case because she was on medical leave. Defs.' 56.1 Resp. ¶ 82.

Houseman that the Storehouse Elevator doors did not fully open prior to Tuckett's accident. Rene Rosario, a locksmith on Rikers Island, "had tripped over the [Storehouse Elevator] door a few times in the past" and reported the issue to Officer Houseman. Schultz Decl., Ex. P, Dep. of Rene Rosario ("Rosario Dep.") (ECF No. 36-30), at 36:8-9, 38:5-13. Gladstone McLean, a machinist with DOC and Tuckett's supervisor, saw the clamshell door stick up "every time" he rode the elevator for "about maybe one to two months" and reported the issue to Officer Houseman "maybe two or three times" prior to Tuckett's accident. Schultz Decl., Ex. N, Deposition of Gladstone McLean ("McLean Dep.") (ECF No. 36-27), at 30:4-33:5. Chiu also testified that he complained about the problem to Officer Houseman prior to Tuckett's accident. Decl. of David Tolchin ("Tolchin Decl."), Ex. 2, Dep. of Kwongcheuk Chui ("Chui Dep.") (ECF No. 44-3), at 48:17-24. Although there is no evidence that Houseman herself ever reported these issues to Slade, McLean testified that one to two months before the accident, he told two Slade elevator mechanics that the Storehouse Elevator was misleveling. *See* McLean Dep. at 46:2-48:16.

On December 17, 2014, one week prior to Tuckett's accident, Alvarado performed preventative maintenance on the Storehouse Elevator. Defs.' 56.1 ¶ 20. Alvarado testified that preventative maintenance would have included, among other things, addressing any issues with the clamshell doors failing to fully open or close, and that he did not see any issues with the clamshell doors at the time of the inspection. *See* Alvarado Dep. at 52:4-13. In addition, Alvarado testified that after performing the preventative maintenance, he assisted with the New York City Department of Buildings ("DOB") inspection of the Storehouse Elevator on the same day—December 17, 2014. The Storehouse Elevator passed inspection. Tolchin Decl., Ex. 5, NYC Dept. of Buildings Elevator Inspections (ECF No. 44-7); Alvarado Dep. at 56:3-5.

### c. Procedural History

On April 19, 2016, Tuckett filed a summons and verified complaint against Slade in the Supreme Court of the State of New York, County of Bronx. *See* ECF No. 1. On June 1, 2016, Slade removed the case and filed an answer to the complaint. ECF Nos. 1-3. On August 31, 2017, Slade moved for summary judgment. ECF Nos. 34-38. Tuckett filed an opposition on October 27, 2017, ECF Nos. 44-48, and Slade filed a reply on December 1, 2017, ECF Nos. 52-56.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

Under New York law, an elevator company "may establish prima facie entitlement to summary judgment by presenting 'competent evidence in admissible form showing that the elevator was functioning properly before and after the accident, and that, even if a defect existed, the company did not have actual or constructive notice of any such defect.'" *Meade v. Otis Elevator Co.*, No. 15-cv-04822, 2017 WL 6509259, at *6 (S.D.N.Y. Dec. 18, 2017) (quoting *Ulerio v. Schindler Elevator Corp.*, No. 12-cv-01496, 2014 WL 1303710, at *4 (S.D.N.Y. Mar. 26, 2014)). If the defendant makes this prima facie showing, to defeat the motion "the plaintiff must come forward with evidence capable of showing that the defendant either: (1) created the defect; or (2) had actual or constructive notice of the defect," to create a triable issue of fact. *Id.* (internal quotation and

6

citation omitted).

## III. DISCUSSION

### a. Choice of Law

This case was removed to federal court on the basis of diversity jurisdiction. Notice of Removal (ECF No. 1) ¶ 8. As such, the court applies state substantive law and federal procedural law. *Com/Tech Commc'n Techs., Inc. v. Wireless Data Sys., Inc.*, 163 F.3d 149, 150 (2d Cir. 1998). "The New York Court of Appeals has held that 'the relevant analytical approach to choice of law in tort actions in New York' is the 'interest analysis.'" *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)). The "interest analysis" requires that "the law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict. Under this formulation, significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* (internal alterations and citations omitted).

Tuckett is a New York citizen, and the alleged tort occurred in New York at the facility where Slade employees routinely visited and performed maintenance. The only other jurisdiction with any interest is New Jersey, of which Slade is a citizen. The balance of these contacts weighs heavily in favor of New York. However, even if the interest analysis did not favor New York, where, as here, "the parties' briefs assume that New York substantive law governs the issues . . . such implied consent is . . . sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)); *see also Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 323 (S.D.N.Y. 2014) (collecting cases). Because the parties here cite exclusively to New York law in their briefs, they have consented to the application of New York law.

7

Several district courts in this Circuit have applied the summary judgment standard used by New York courts when evaluating motions for summary judgment involving an elevator company. *See, e.g.*, *Meade*, 2017 WL 6509259, at *6; *Ulerio*, 2014 WL 1303710, at *4. As described above, that standard entitles a defendant to demonstrate its entitlement to summary judgment by establishing a *prima facie* case, which can then be rebutted by the plaintiff. The federal district courts applying that standard did not articulate the basis for the implicit conclusion that New York courts' approach to resolving summary judgment motions is substantive, rather than procedural. This is an issue that may be worthy of focus in the future. *See, e.g. Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (discussing classification of laws as "substantive" or "procedural" for *Erie* purposes); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 212 (S.D.N.Y. 2006) (engaging in "substance-procedure" analysis under *Erie*); *HD Brous & Co. v. Mrzyglocki*, No. 03-cv-8385, 2004 WL 376555, at *11 (S.D.N.Y. Feb. 26, 2004) (same). The Court need not decide this issue here, however, because regardless of whether the New York standard or the federal standard applies, Slade's motion for summary judgment must be denied.

**b. New York Standard**

Slade has not established that it is entitled to summary judgment under the New York standard because it has failed to show that the elevator was functioning properly after Tuckett's accident. The first step of the New York standard requires that the plaintiff show that "the elevator was functioning properly before and after the accident, and that, even if a defect existed, the company did not have actual or constructive notice of any such defect." *Meade*, 2017 WL 6509259, at *6 (citation omitted). Assuming *arguendo* that Slade's evidence regarding the preventative maintenance and inspection in advance of the accident suffice to show that the elevator was working properly before the accident, Slade has presented no evidence that the elevator was functioning properly after the accident. In point of fact, Tuckett has presented evidence demonstrating that the

elevator was not working properly after the accident. In his deposition, Rosario testified that he rode the elevator up from the basement shortly after Tuckett's accident, and experienced the same misleveling condition that allegedly caused Tuckett's injury. Rosario Dep. at 35:13-36:4. Slade provided no rebuttal to this testimony, and no affirmative evidence that the elevator was functioning properly after the accident.

Slade contends that the facts of this case are "almost identical" to those in *Isaac v. 1515 Macombs, LLC*, 922 N.Y.S.2d 354 (1st Dep't 2011). Slade accurately observes that the evidence in both cases shows that the elevators had passed a Department of Buildings inspection shortly before the plaintiffs' accidents. However, in *Isaac*, the defendants also submitted evidence that the elevator was leveling properly *after* the accident. *Id.* at 459. Slade presented no such evidence here, and Tuckett has presented affirmative evidence showing the elevator was not functioning properly. Accordingly, Slade has not established *prima facie* entitlement to summary judgment under the New York standard.

### c. Federal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322 ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-

9

movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb*, 521 F.3d at 137 (citing *Celotex*, 477 U.S. at 323).

      i. <u>Negligence</u>

To prove a claim of negligence under New York law, a plaintiff must establish by a preponderance of the evidence the following elements: "(1) a duty owed to plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Meade*, 2017 WL 6509259, at *6 (internal quotation marks omitted) (citing *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399 (1985); *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 399 (1928); *Levine v. New York*, 309 N.Y. 88 (1955)). With respect to the first prong—the existence of a duty—the New York Court of Appeals has held that "[a]n elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found." *Rogers v. Dorchester Assocs.*, 32 N.Y.2d 553, 559 (1973) (citations omitted).

Here, there is a genuine dispute as to whether Slade had knowledge of the misleveling issue with the Storehouse Elevator before Tuckett's accident. McLean testified that one to two months before Tuckett's accident, he told two Slade elevator mechanics that the Storehouse Elevator was misleveling. *See* McLean Dep. at 46:2-48:16. Although Slade contests the credibility of this testimony and asserts that it is "discredited" by Slade employees' testimony, Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (ECF No. 35), at 8, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys*, 426 F.3d at 553 (citation omitted). As a result, Slade's motion for summary judgment must also be denied under the federal summary judgment standard.

**d. Res Ipsa Loquitur**

Because Slade's motion for summary judgment is denied, the Court will defer until pretrial motion practice the question whether Tuckett should be permitted to present his case to the jury on the theory of *res ipsa loquitur*.

IV. **CONCLUSION**

For the foregoing reasons, Slade's motion for summary judgment is DENIED. The Clerk of Court is directed to close the motion pending at ECF No. 34.

SO ORDERED.

Dated: August 14, 2018
New York, New York

GREGORY H. WOODS
United States District Judge